UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE G. HARRIS T/A ) | |
| WILDLIFE COLLECTION ) | |
|     Plaintiff, ) | |
| ) | |
|   vs. ) | Case No. 4:97CV01604 ERW |
| ) | |
| PAT WROB, Individually and Jointly, ) | |
| T/A RIVERS EDGE PRODUCTS et al., ) | |
|     Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff George G. Harris's, trading as Wildlife Collection, Motion for Contempt [ECF No. 32]. The Court heard oral arguments on the Motion on October 18, 2011.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff George G. Harris, trading as Wildlife Collection, designs and sculpts wildlife-themed pewter pins. He owns over 550 copyrighted designs and sells the pins made from his designs to stores and organizations worldwide.

On August 1, 1997, Plaintiff filed a copyright infringement suit against Defendants Pat Wrob, individually and jointly, doing business as Rivers Edge Products; RiversEdge Products, Inc.; Rocking P, Inc.; and Sportsman's Supply, Inc. In 1998, the parties executed a confidential Settlement Agreement and stipulated to entry of a Consent Judgment. On May 21, 1998, the Court signed the Consent Judgment, which permanently enjoins Defendants from:

> (a) selling, offering for sale, advertising, trading, bartering, disposing, taking orders, placing orders, facilitating the placement or delivery of orders, and, or receiving monetary gain for the sale or transfer of any of the pins shown in Exhibit A, attached hereto, excluding items nos. 121, 122, 317, 318, 520, 521, and 522 on page 1 and including items Q and R on page 2 of Exhibit A.
> (b) distributing promotional material which displays the above listed items.

Pl.'s Exh. A, at 1-2, ECF No. 33-2.  "Exhibit A" is a copy of Defendants' catalog that contains images of the enjoined pin designs.  *Id*. at 4-9.  The images of the pins are clearly marked with item numbers.  *Id*.  Pursuant to a settlement agreement, Defendants' remaining inventory of the enjoined pins were "either destroyed or returned to Mr. Harris."  Wrob Decl. ¶ 15, ECF No. 47-1.

In April 2011, Plaintiff learned from Todd Murphy, an acquaintance and customer, that pewter wildlife pins resembling his designs were being offered for sale at the lodge of Bennett Spring State Park in Lebanon, Missouri.  Murphy Decl. ¶ 3-4.  The pins were attached to a RiversEdge product card.  *Id*. at ¶ 4.  Murphy purchased three pins from the store.  *Id*. at ¶ 5.  Murphy then contacted RiversEdge directly to purchase more pins.  *Id*. at ¶ 6.  A RiversEdge worker emailed Murphy a website link advertising numerous pins of the enjoined designs.  *Id*.  After speaking with Plaintiff, Murphy purchased over $150 worth of pins from Defendants' website.  *Id*. at ¶ 6-7.  Plaintiff received the purchased pins from Murphy and noted that they were "mirror image" copies of his designs that Defendants had been enjoined from advertising or selling.  Hr'g Tr. 17; ECF No. 55.  Plaintiff then independently conducted an internet search for other enjoined designs being sold by Defendants.  *Id*. at 18.  Plaintiff found the enjoined designs on PrintFish1.com's website and purchased some pins from that website.[1]  *Id*. at 18-19.

After this investigation, Plaintiff sent a demand letter to Defendants with a copy of this pending Motion offering to settle for a one-time payment of $115,000.  *Id*. at 63-64.  Defendants did not respond to the demand letter.  Plaintiff then moved the Court to hold Defendants in contempt for violating the terms of the Consent Judgment.  Defendants did not file a response to the motion, and on September 15, 2011, the Court ordered Defendants to show cause why the motion should not be

---

[1] PrintFish1.com is a vendor who utilizes eBay.com to sell products.

granted. [ECF No. 40]. Defendants eventually responded. [ECF No. 47]. A hearing was held on October 18, 2011. Both parties filed post-hearing briefs in support of their positions. [ECF Nos. 63, 66].

## II.  LEGAL STANDARD

Title 18 U.S.C. § 401(3) gives a federal court the power to punish "by fine or imprisonment, at its discretion . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." The party seeking a civil contempt order must show by clear and convincing evidence that the alleged contemnor violated a court order. *Chicago Truck Drivers, Helpers, & Warehouse Workers Union Pension Fund v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). "A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order." *Chaganti & Associates, P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006) (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002)).

Once the movant meets his or her burden, the burden of proof shifts to the alleged contemnor to prove a defense. *Chicago Truck*, 207 F.3d at 506. One such defense is an inability to comply with the underlying order. *Id.* "[A]lleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why 'categorically and in detail,' (2) that their inability to comply was not 'self-induced,' and (3) that they made 'in good faith all reasonable efforts to comply[.]'" *Id.* (internal citations omitted).

## III.  DISCUSSION

Plaintiff asserts that his moving papers and the hearing transcript [ECF No. 55] set forth incontrovertible evidence that Defendants willfully violated the clear and specific Consent Judgment and, therefore, the Court should hold Defendants in contempt. Plaintiff seeks compensatory

3

damages, including enhanced willful statutory damages, costs, and attorney's fees, and any other relief the Court deems proper.

Defendants respond that the Court never enjoined specific wildlife designs, but rather, the Court enjoined activity involving specific wildlife pins. According to Defendants, the Consent Judgment narrowly restricts their behavior. Defendants state that this Motion asserts a new copyright infringement claim. Defendants concede that some of the images of the enjoined designs appeared on their website by mistake. Defendants state that after they signed the Consent Judgment, they hired an artist to design new artwork from which the pins now are made. Defendants assert that sales of the fish pins over the past two years have totaled less than $2000. Therefore, they contend that any violation of the Consent Judgment was unintentional and any harm caused by such conduct was minimal.

### A.     *The Consent Judgment is Clear and Specific*

In this case, the underlying order is the Consent Judgment signed by the Court, Plaintiff, and Defendants on May 21, 1998. The language of the Consent Judgment clearly and unambiguously prohibits Defendants from "selling, offering for sale, [or] advertising . . ." the enjoined designs. It also describes with specificity the enjoined designs by providing a photo of each design. The Court, therefore, finds the Consent Judgment is clear and specific.

### B.     *The Evidence Shows Clearly and Convincingly that Defendants Violated the Consent Judgment*

The record shows that Defendants have violated the clear and specific Consent Judgment by advertising, offering for sale, and selling the enjoined designs in the form of pewter wildlife pins (hereinafter, "enjoined pins"). At the hearing, Plaintiff testified that both he and Murphy purchased enjoined pins distributed by Defendants. Hr'g Tr. 17-19. Murphy purchased one enjoined pin from the Bennett Spring's lodge. *Id*. at 22. Murphy also purchased 228 pins directly from Defendants.

4

ECF No. 49-2 at 4. Of the pins purchased directly from Defendants, six of the seventeen designs are enjoined designs. Hr'g Tr. 25. Defendants' website also contained pictures of eleven enjoined designs. Hr'g Tr. 30.

After Murphy made his purchases, Plaintiff purchased eight pins from PrintFish1.com and four pins were enjoined pins. *Id*. at 23. Plaintiff testified that the invoice provided by PrintFish1.com indicates that the pins were purchased from Defendants. *Id*. at 24. Screen shots from eBay.com show that the pins sold by PrintFish1.com are "River's Edge Products." Pl.'s Exh. G, ECF No. 33-8.

Defendants concede partial noncompliance with the Consent Judgment. Defs.' Post-Hr'g Br. 2, ECF No. 66. Moreover, Defendant Wrob did not refute any of Plaintiff's testimony regarding Plaintiff or Murphy purchasing enjoined pins either directly or indirectly from Defendants. He also did not contest that the enjoined pins were advertised on Defendants' website. His testimony, which attempted to explain that the sale and advertising of the enjoined pins was inadvertent, misses the point. Unlike criminal contempt, "[W]illfulness is not required for a finding of civil contempt[.]" *United States v. Laurins*, 857 F.2d 529, 534 (9th Cir. 1988); *Cedar Rapids Lodge & Suites, LLC, v. JFS Dev., Inc.*, 2011 WL 4625661 *3 (N.D. Iowa Oct. 3, 2011) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). The only inquiry in this contempt proceeding is whether a clear and specific court order was violated. The contemnor's intent is irrelevant. Plaintiff has shown through clear and convincing evidence that Defendants violated the Consent Judgment.

### C.   *Defendants Have Not Shown an Inability to Comply*

Clear and convincing evidence shows Defendants violated the Consent Judgment. Therefore, Defendants may defend this violation by showing their inability to comply with the Consent Judgment. *Chicago Truck Drivers*, 207 F.3d at 506. Defendants have made no such showing.

Defendants contend that their violation of the Consent Judgment was accidental, careless, or negligent.  Defendant Wrob recalled that in 1998, he returned the inventory of the enjoined pins to Plaintiff.  Hr'g Tr. 56.  Defendant Wrob admitted that after he was served with the Court's show cause order, he found two boxes that contained enjoined pins in his warehouse.  *Id*. at 52-54.  To explain the presence of the enjoined pins in Defendants' warehouse, he surmised that in 1998, the Taiwanese company that manufactured wildlife pins for Defendants accidentally sent a few boxes of enjoined design pins when the company was supposed to manufacture and ship pins based on only on the new, non-enjoined designs.  *Id*.  at 54.  Wrob also testified that sales for the wildlife pins were relatively minimal. *Id*. at 59.  He stated that Defendants always tried to work within the confines of the injunction.  *Id*. at 67.

Defendant Wrob's testimony attempts to excuse the contemptuous conduct by categorizing the behavior as a series of mistakes: Defendants mistakenly received enjoined pins in 1998 from the Taiwanese manufacturer, a graphic designer mistakenly placed photos of the enjoined pins on their website, and enjoined pins were mistakenly sold "last year as Defendants tried to closeout their remaining inventory of hat pins."  Defs.' Post-Hr'g Br. 2, ECF No. 66.  As mentioned above, willfulness is not a prerequisite for a finding of civil contempt.  *Laurins*, 857 F.2d 529 at 534; *see also Philippe v. Window Glass Cutters League of America*, 99 F. Supp. 369, 375 (W.D. Ark. 1951) ("It might be observed that 'the absence of wilfulness does not relieve from civil contempt'.) Defendants also seem to believe that because they only minimally profited from violating the Consent Judgment, the violation does not warrant any type of punishment.  Defendants' excuses do not amount to a cognizable civil contempt defense.

**IV.    REMEDY**

Because the Court finds by clear and convincing evidence that Defendants are in civil contempt of the Consent Judgment, the Court must determine an appropriate remedy.  *Chaganti & Associates, P.C.*, 470 F.3d at 1224.  Plaintiff asks the Court to award compensatory damages, including willful statutory damages, costs, and attorney's fees, and any other relief the Court deems proper.

"Civil contempt . . . seeks only to 'coerc[e] the defendant to do' what a court had previously ordered him to do." *Turner v. Rogers*, --- U.S. ---, 131 S. Ct. 2507, 2516 (2011) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)); *Willy v. Coastal Corp.*, 503 U.S. 131, 138-39 (1992).  "A district court may impose civil contempt sanctions for one of two purposes: to compensate parties aggrieved by contumacious conduct or to coerce compliance with the court's orders."  *Chaganti & Associates, P.C.*, 470 F.3d at 1224.

"[A] compensatory sanction is not imposed to vindicate the court's authority or to punish the contemnor, but rather serves to make reparation to the injured party, restoring that party to the position it would have held had the court's order been obeyed." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989) (quoting *In the Matter of the Grand Jury Subpoena of June 12, 1986*, 690 F. Supp. 1451, 1453 (D. Md.1988)).  Where compensation to the complainant is intended, "[s]uch fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).  A court may award reasonable expenses and attorney's fees incurred in bringing the contempt motion as a form of compensatory relief.  *Jake's Ltd. v. City of Coates*, 356 F.3d 896, 900 (8th Cir. 2004); *United States v. Rue*, 819 F.2d 1488, 1495

(8th Cir. 1987). A finding of willfulness is not necessary for the award of fees. *Hartman*, 884 F.2d at 1107.

When a sanction is designed to coerce the contemnor to comply with the underlying court order, the sanction should be payable to the court, rather than to the opposing party. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988). The Court should consider three factors when determining the amount of the monetary sanction: 1) "the character and magnitude of the harm threatened by continued contumacy," 2) "the probable effectiveness of any suggested sanction in bringing about the result desired," and 3) "the amount of [the contemnor's] financial resources and the consequent seriousness of the burden" to that particular party. *Chaganti & Associates, P.C.*, 470 F.3d at 1224 (quoting *United Mine Workers*, 330 U.S. at 304).

Plaintiff does not seek reimbursement for any losses caused by Defendants' violation of the Consent Judgment. Rather, Plaintiff seeks willful statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c)(2). The pending action, however, is a motion for contempt that seeks enforcement of the Consent Judgment, and not an independent copyright infringement lawsuit. Plaintiff has presented clear and convincing evidence that Defendants violated the Consent Judgment. He has not undertaken, much less proved the elements of copyright infringement. *See Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) (stating the elements of copyright infringement). Therefore, a request for statutory copyright infringement damages is not appropriate and is denied.

The Court finds that Defendants' violation of the Consent Judgment warrants compensatory sanctions. Defendants are ordered to pay Plaintiff's attorney's fees and costs associated with this Motion. Within ten (10) days of this Order, Plaintiff is ordered to produce an itemized report

detailing accrued attorney's fees and costs. Plaintiff should include in this amount the moneys expended to purchase the enjoined pins.

Within ten (10) days of this Order, Defendants are ordered to provide a document that lists all wildlife pins sold each year since May 21, 1998. The document should list the item number and style name of each pin as well as the amount of money received for each pin. Defendants should mark which sales were of enjoined pins. After review of that document, the Court will award to Plaintiff these lost profits for the sale of the enjoined pins. The Court believes that this monetary sanction will restore Plaintiff "to the position it would have held had the court's order been obeyed." *Hartman*, 884 F.2d at 1106.

Upon receipt of the requested reports, the Court will enter an Order stating the amount of compensatory sanctions Defendants must pay to Plaintiff. The Court has no intention of ordering further sanctions, but recognizes its ability to do so. Depending on the content of Defendants' reports, the Court may be forced to consider other options.

The Court orders all remaining copies of the enjoined pins are to be shipped to Plaintiff at Defendants' expense within ten (10) days of this Order. Defendants <u>shall not</u> keep any copies of the pins "for their records."

Defendants' conduct during these proceedings leads the Court to believe that Defendants have not taken this action seriously. Allegations of contempt are allegations that should be taken seriously and addressed promptly. Defendants should be warned that any further violation of the Consent Judgment, whether intentional or unintentional, will result in a much more severe punishment.

## V.  CONCLUSION

For the foregoing reasons, the Court finds Defendants in civil contempt of the Consent Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Civil Contempt [ECF No. 32] is **GRANTED**.

**IT IS FURTHER ORDERED** that **within ten (10) days** of this Order, Plaintiff shall file with the Court an itemized report detailing accrued attorney's fees and costs as described above.

**IT IS FURTHER ORDERED** that **within ten (10) days** of this Order, Defendants shall file with the Court an itemized report detailing any sales of enjoined pins from May 21, 1998 to present, as described above.

**IT IS FURTHER ORDERED** that **within ten (10) days** of this Order, Defendants shall ship to Plaintiff all remaining copies of the enjoined pins in their inventory.

Dated this   29th   day of February, 2012.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE